Ernest J. LANE et ux., Appellants,

v.

**ANCHOR CASUALTY COMPANY,**
Appellee.

No. 13882.

Court of Civil Appeals of Texas.

Houston.

March 1, 1962.

Harry P. Jarvis and Jerome J. Pope,
Houston, for appellants.

H. H. Prewett, Houston, Dyess, Dyess, Prewett & Cantey, Houston, of counsel, for appellee.

WERLEIN, Justice.

Ernest J. Lane obtained judgment by default against Dan W. Hammons for damages resulting from an automobile collision. Thereafter as a judgment creditor he brought this suit against appellee, Anchor Casualty Company, under a policy it had issued Hammons. Hammons intervened in the suit. The case was tried before the court without a jury and judgment was rendered in favor of appellee. Only Lane has appealed from the judgment.

■ Since the record contains no findings of fact or conclusions of law by the trial court, the trial court's judgment implies all necessary fact findings in support thereof. In seeking to determine whether there is any evidence to support the judgment and the court's implied findings of fact, "it is proper to consider only that evidence most favorable to the issue and to disregard entirely that which is opposed to it or contradictory in its nature." Renfro Drug Co. v. Lewis, 1950, 149 Tex. 507, 235 S.W.2d 609; Kirksey v. Warren, Tex.Civ.App.1961, 348 S.W.2d 33.

■ Since appellant's claim rests entirely under the policy which was issued by appellee to Hammons, appellee has the right in this action to assert whatever defenses it might have against Hammons under said policy. Universal Automobile Insurance Company v. Culberson, 126 Tex. 282, 86 S.W.2d 727, 87 S.W.2d 475; New Amsterdam Casualty Company v. Hamblen, 144 Tex. 306, 190 S.W.2d 56. Appellee has asserted that it is not liable under the policy for the reason that Hammons did not give written notice of the accident as soon as practicable; that he did not deliver suit papers to appellee, and did not cooperate with appellee.

Condition 1. of the policy provides:

"When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses."

The evidence shows that the accident occurred on January 21, 1956 and that the first written notice thereof was given appellee's agent, Ray Toman, on February 8, 1956 in the form of a letter dated February 6, 1956, from appellee's attorney, Mr. Duckett, in El Campo. Hammons testified at the trial that he reported the collision to Toman on Monday following the accident. This statement was denied by Toman. Previously in a sworn question and answer statement given by Hammons on March 1, 1956, he said he never reported the accident prior to the time he talked to Mr. Duckett, although he had seen Mr. Toman and could have reported it, but he did not think it was necessary to do so because there wasn't much damage to the other car and Mrs. Lane said she wasn't hurt. He also didn't think he was at fault in the accident.

■ We think there was ample evidence to support the court's implied finding that no notice was given appellee of the accident in question until the written notice was given on February 8, 1956. Eighteen days elapsed before written notice was given although Hammons admitted he had in the meantime seen Toman and could have given notice if he had thought it was necessary to do so. The trial court's implied finding that written notice was not given by the insured to appellee or any of its agents "as soon as practicable", under the facts and circum-

stances of this case, is supported by evidence of probative force.

In Klein v. Century Lloyds, 1955, 154 Tex. 160, 275 S.W.2d 95, it was held that giving notice within 32 days was not as soon as practicable as a matter of law, and further that it was not necessary for the insurer to show harm or prejudice. In the instant case there are no extenuating circumstances, excusing the giving of notice sooner than was done. The fact that Hammons did give notice to another company carrying his $50.00 deductible collision insurance within a day or two after the accident of damage to his own car amounting to $364.00, clearly indicates that he was in a position to have given written notice to appellee or its agents much sooner than 18 days. See Allen v. Western Alliance Insurance Co., Tex.Sup. 1961, 349 S.W.2d 590; State Farm Mutual Automobile Ins. Co. v. Hinojosa, Tex.Civ. App., 346 S.W.2d 914, writ ref., n. r. e.

■ Appellant asserts that the court erred in impliedly finding and concluding that the policy of insurance required Hammons to deliver the process served on him to appellee and to cooperate with appellee for the reason appellee had previously breached the insurance contract by cancelling same and notifying the insured of such cancellation. We do not agree. The policy expressly gives the insurance company the right to cancel the policy by mailing to the insured written notice stating when, not less than 10 days thereafter, such cancellation shall be effective. This is what was done. The evidence shows that on February 13, 1956 appellee sent a notice of cancellation to Hammons notifying him that the insurance policy in question was cancelled effective February 24, 1956 and that all liability of the company under the policy would cease as of such date. Appellee complied with the terms of the policy and did not undertake to cancel the policy retroactively. The cancellation notice did not disclaim liability under the policy in connection with the accident in question.

Condition 2 of the policy provides: "If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative." The policy also provides that the insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The evidence is undisputed that Hammons never delivered to appellee the process which was served upon him. Appellee's claims manager, William R. Powell, testified that he did not know anything about the suit having been filed until in December, 1959.

■ On March 1, 1956 Hammons called at the office of Powell in Houston and gave a sworn question and answer statement and also signed a "Reservation of Rights Agreement". Hammons testified that at such time Powell said he wasn't going to back him up on the insurance policy and wasn't going to defend him. Appellant's attorney, Harry P. Jarvis, testified that on February 13, 1956 he had a telephone conversation with Mr. Powell, relative to the claim against Hammons, and that Powell stated that they were going to cancel him. He also testified that he had a conversation with Powell on February 17, 1956 and that Powell said they were not going to defend Hammons. Powell denied that he ever made such statements to Hammons or Jarvis. The court impliedly found that appellee did not through Mr. Powell disclaim liability at that time under the policy, and thus resolved the fact issue in favor of appellee. Appellee did not make its investigation in the case until after it had obtained from Hammons the reservation of rights agreement.

It should be noted also that at the time Hammons signed the reservation of rights agreement and gave his sworn statement on March 1, 1956, he had with him the cancellation notice which clearly stated that the cancellation of the policy would be effective February 24, 1956. The policy was in full force and effect at the time of the accident, and there was nothing in the notice to indicate anything to the contrary, nor do we think there was anything in the notice which could be construed as excusing Hammons from delivering to the company the citation served upon him or from cooperating with the company in the defense of the claim and the suit that was brought. The cancellation notice did not constitute a waiver of the requirements of the policy or estop appellee from relying upon the conditions in the policy. Moreover, appellant did not plead waiver or estoppel and the testimony to the effect that appellee had disclaimed liability under the policy was objected to by appellee on the ground there was no pleading to such effect.

In the absence of findings of fact and conclusions of law it is impossible for this Court to determine exactly upon what grounds the trial court based its judgment. We think that the failure of Hammons to notify appellee of the accident as soon as practicable was in itself a sufficient ground to support the judgment of the court. This failure occurred before and independently of appellant's asserted disclaimer of liability by appellee. There is also evidence, however, to the effect that Hammons did not properly cooperate with appellee in connection with the claim against the company, and undisputed evidence, as hereinabove stated, that he did not deliver to appellee at any time the process served upon him.

Appellant contends that the implied findings of fact by the trial court are against the great weight and preponderance of the evidence. We have carefully examined the entire record, and all the evidence, both that favorable to the implied findings of the court and that militating against such findings, and have concluded that we cannot say that the implied findings of the trial court are so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. In re King's Estate, 1951, 150 Tex. 662, 244 S.W.2d 660.

The judgment of the trial court is affirmed.